No. 24-3892

*In the*

# United States Court of Appeals
### *for the*
## Sixth Circuit

WILLIAM ELLIS,
*Plaintiff-Appellee*,

– v. –

JEFFREY YASENCHACK,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Ohio
Case No. 1:22-cv-0815, Hon. Solomon Oliver Jr.

## RESPONSE BRIEF FOR PLAINTIFF-APPELLEE

JOSEPH F. SCOTT
 *Scott & Winters LLC*
 *11925 Pearl Road*
 *Suite 310*
 *Strongsville, OH 44136*
 *(216) 912-2221*

PAUL W. HUGHES
SARAH P. HOGARTH
CHARLES SEIDELL
 *McDermott Will & Emery LLP*
 *500 North Capitol Street NW*
 *Washington, DC 20001*
 *(202) 756-8000*

*Counsel for Plaintiff-Appellee*

## CORPORATE DISCLOSURE

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Plaintiff-Appellee certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome. Defendant-Appellant Jeffrey Yasenchack and Plaintiff-Appellee William Ellis are both individuals.

Dated: April 2, 2025 /s/ *Paul W. Hughes*

**TABLE OF CONTENTS**

Corporate Disclosure................................................................i

Introduction ............................................................................1

Jurisdiction ............................................................................3

Issue Statement......................................................................4

Statement of the Case ...........................................................4

    A.   Factual background ....................................................4

    B.   Procedural background ............................................10

Summary of Argument.........................................................13

Standard of Review ..............................................................16

Argument ..............................................................................17

    The district court correctly rejected  Yasenchack's qualified-immunity defense at the summary judgment stage ...........................17

    A.   The district court identified material disputed facts as to whether Yasenchack violated Ellis's right to be free from malicious prosecution. ...................................................17

        1.   The Court lacks jurisdiction to resolve Yasenchack's disagreement with whether genuine fact disputes exist on probable cause. ....................................................20

            a.   The district court found probable cause genuinely disputed in light of Yasenchack's false statements that spurred a prosecution. ...........................................21

            b.   Yasenchack's attempt to reframe a finding of genuinely disputed facts as a legal question about poisonous-fruit doctrine lacks merit. ............................31

        2.   The Court lacks jurisdiction to resolve Yasenchack's disagreement with whether genuine fact disputes exist as to his role in the prosecution decision. .....................47

    B.   The constitutional right was clearly established. ........................52

Conclusion.............................................................................57

Addendum: Record Designations

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Holmes,*
2022 WL 577668 (6th Cir. 2022)..............................................................29

*Barnes v. Wright,*
449 F.3d 709 (6th Cir. 2006) ............................................................18, 24

*Barry v. O'Grady,*
895 F.3d 440 (6th Cir. 2018) ...................................................................16

*Berryman v. Rieger,*
150 F.3d 561 (6th Cir. 1998) ...................................................................30

*Black v. Wigington,*
811 F.3d 1259 (11th Cir. 2016) ...............................................................43

*Boyd v. City of New York,*
336 F.3d 72 (2d Cir. 2003)................................................................. 40-42

*Brannum v. Overton Cnty. School Bd.,*
516 F.3d 489 (6th Cir. 2008) ...................................................................16

*Caskey v. Fenton,*
2022 WL 16964963 (6th Cir. 2022)........................... 38, 49, 51, 52, 55, 56

*Clark v. Louisville-Jefferson Cnty. Metro Gov't,*
130 F.4th 571 (6th Cir. 2025)..................................................................30

*Clermont Envtl. Reclamation Co. v. Hancock,*
474 N.E.2d 357 (Ohio Ct. App. 1984) .....................................................42

*Clynch v. Chapman,*
285 F. Supp. 2d 213 (D. Conn. 2003)......................................................42

*Cummings v. City of Akron,*
418 F.3d 676 (6th Cir. 2005) ...................................................................56

*Daly v. Certo,*
--- N.E.3d ---, 2025-Ohio-293 (Ohio Ct. App. 2025) ..............................42

*DiLuzio v. Vill. of Yorkville,*
796 F.3d 604 (6th Cir. 2015) .......................................................16, 22, 31

*District of Columbia v. Wesby,*
582 U.S. 48 (2018) ............................................................................55, 56

**Cases—continued**

*Franks v. Delaware*,
438 U.S. 154 (1978) ...................................................................... 32-34

*Gannon v. City of New York*,
917 F. Supp. 2d 241 (S.D.N.Y. 2013) ....................................................41

*Garza v. Lansing School District*,
972 F.3d 853 (6th Cir. 2020) ...................................................38

*Gerics v. Trevino*,
974 F.3d 798 (6th Cir. 2020) ...........................................................29, 30

*Gregory v. City of Louisville*,
444 F.3d 725 (6th Cir. 2006) .......................................... 22, 23, 29-31, 48

*Hector v. Watt*,
235 F.3d 154 (3d Cir. 2000) ...............................................................44

*Johnson v. Jones*,
515 U.S. 304 (1995) ................................................. 3, 21-23, 29, 30, 37

*Johnson v. Mosely*,
790 F.3d 649 (6th Cir. 2015) .................................................................50

*Jones v. City of Chicago*,
856 F.2d 985 (7th Cir. 1988) ................................................................52

*King v. Harwood*,
852 F.3d 568 (6th Cir. 2017) ...............11, 18, 24, 26-28, 34, 37, 45, 52-55

*Kisela v. Hughes*,
584 U.S. 100 (2018) .................................................................................57

*Lingo v. City of Salem*,
832 F.3d 953 (9th Cir. 2016) .........................................................43, 44

*Malley v. Briggs*,
475 US. 335 (1986) ...........................................................................45, 46

*Manuel v. City of Joliet*,
580 U.S. 357 (2017) ........................................................................33, 36

*Martin v. Marinez*,
934 F.3d 594 (7th Cir. 2019) ..........................................................42, 43

*Mazyck v. Johnson*,
2009 WL 2707360 (E.D.N.Y. 2009) ....................................................41

iv

**Cases—continued**

*Meadows v. City of Walker*,
46 F.4th 416 (6th Cir. 2022)................................................16

*Miller v. Maddox*,
866 F.3d 386 (6th Cir. 2017).........................................53, 56

*Mills v. Barnard*,
869 F.3d 473 (6th Cir. 2017).................................24, 36, 55

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ...............................................................3, 21

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir. 2009)................................................30

*Murphy v. City of Elmira*,
2023 WL 593877 (W.D.N.Y. 2023)......................................42

*Estate of Owensby v. City of Cincinnati*,
414 F.3d 596 (6th Cir. 2005).............................................4, 10

*Pagán-González v. Moreno*,
919 F.3d 582 (1st Cir. 2019)................................. 33-35, 45

*Painter v. Robertson*,
185 F.3d 557 (6th Cir. 1999)................................................22

*Ramsey v. Rivard*,
110 F.4th 860 (6th Cir. 2024).........................................29, 37

*Reed v. City of Chicago*,
77 F.3d 1049 (7th Cir. 1996).................................................49

*Richards v. Cnty. of Washtenaw*,
818 F. App'x 487 (6th Cir. 2020).........................................50

*Robertson v. Lucas*,
753 F.3d 606 (6th Cir. 2014).................................................50

*Romo v. Largen*,
723 F.3d 670 (6th Cir. 2013).........................................30, 37

*Sampson v. Vill. of Mackinaw City*,
685 F. App'x 407 (6th Cir. 2017)........................................49

*Sanders v. Jones*,
845 F.3d 721 (6th Cir. 2017).................................................18

**Cases—continued**

*Spurlock v. Satterfield,*
167 F.3d 995 (6th Cir. 1999) ................................................................53

*State v. Ellis,*
No. CA-19-108970 (Ohio App. 8th Dist.)................................................7

*State v. Ellis,*
No. CR-19-637876-A (Cuyahoga Cnty. Common Pleas) ..........................5

*Sykes v. Anderson,*
625 F.3d 294 (6th Cir. 2010) ..............11, 18, 19, 23, 37, 38, 45, 47-51, 55

*Estate of Taylor v. Salt Lake City,*
16 F.4th 744 (10th Cir. 2021)................................................................43

*Thompson v. Clark,*
596 U.S. 36 (2022) .........................................................................18, 44

*Tlapanco v. Elges,*
969 F.3d 638 (6th Cir. 2020) ...........................................................49, 57

*Townes v. City of New York,*
176 F.3d 138 (2d Cir. 1999)............................................................ 40-42

*United States v. Atkin,*
107 F.3d 1213 (6th Cir. 1997) ................................................................8

*United States v. Davis,*
430 F.3d 345 (6th Cir. 2005) ................................................................34

*United States v. Ellis,*
2021 WL 3168271 (N.D. Ohio 2021).................................. 5-9, 25, 46, 51

*United States v. Ellis,*
No. 20-cr-302 (N.D. Ohio Feb. 11, 2020) ............................... 8-10, 19, 25

*United States v. Leon,*
468 U.S. 897 (1984) ..........................................................................9, 34

*United States v. Tucker,*
742 F. App'x 994 (6th Cir. 2018)...........................................................34

*Webb v. United States,*
789 F.3d 647 (6th Cir. 2015) ........................... 22, 24, 34, 36, 50, 53, 55

*White v. Pauly,*
580 U.S. 73 (2017) ...............................................................................52

**Cases—continued**

*Wright v. Spaulding,*
939 F.3d 695 (6th Cir. 2019) ....................................................17

*Yancey v. Carroll Cnty.,*
876 F.2d 1238 (6th Cir. 1989) ..................................................57

**Constitutional provisions, statutes, and rules**

U.S. Const. amend. IV................................... 11, 13, 15, 18, 32, 33, 53, 56, 57

28 U.S.C.
§ 1291 ............................................................................21
§ 1331 .............................................................................3
§ 1343 .............................................................................3
§ 1367 .............................................................................3

42 U.S.C. § 1983 ...................................... 3, 10, 17, 20, 22, 40, 42, 44-47, 49

Fed. R. Civ. P. 56(a)...................................................................16

**Other Authorities**

John H. Tucker, *Cleveland Police Detective Resigns, Avoids
Discipline in Retaliation Case* (May 11, 2023)...........................................5

## INTRODUCTION

Over the course of two years, Detective Yasenchack committed such fundamental constitutional violations in searching, seizing, detaining, and prosecuting William Ellis that two separate courts threw out two separate criminal cases. The courts found that Yasenchack lied about his altercation with and search of Ellis in 2019. They found he misrepresented the source of key information as a "concerned citizen," when in reality he obtained the information under threat of punishment. They found he lied about information he received from alleged confidential informants. And they found he lied about the existence of pending criminal charges against Ellis. Given the volume and magnitude of these falsehoods, a federal court held that Yasenchack made them deliberately or in reckless disregard for the truth.

Against this backdrop, the district court correctly denied Yasenchack qualified immunity on Ellis's malicious-prosecution claim. Ellis provided sufficient evidence from which a reasonable jury could find that Yasenchack violated Ellis's clearly established right to be free from malicious prosecution, and the district court recognized as much in concluding that fact disputes precluded summary judgment on qualified immunity grounds.

Yasenchack's arguments on appeal miss the mark. Principally, he disputes the district court's finding of material disputed facts—which is imper-

missible on an interlocutory appeal. The district court concluded that genuine disputes of material fact exist as to each disputed (and fact-bound) element of a malicious-prosecution claim. This Court lacks jurisdiction to revisit those conclusions. But Yasenchack's arguments fare no better on the merits. He mischaracterizes the district court's opinion as importing the fruit of the poisonous tree doctrine into the civil context. But that is not what the district court did. Rather, it merely held—consistent with precedent from this and other courts—that an officer's knowledge that evidence was seized illegally can factor into the officer's assessment that a prosecution will succeed. Because that is the relevant legal framework, the district court rightly recognized numerous material factual disputes precluding an award of summary judgment.

Other than his improper attempt to reargue the facts, Yasenchack offers no other ground for reversal. He quibbles with the district court's finding that he influenced the decision to prosecute, but that challenge is jurisdictionally barred. Indeed, his own false statements constituted *half* of the paragraphs in the "probable cause" section of the affidavit attached to the resulting federal criminal complaint. Yasenchack's further contention that the law was not clearly established runs headlong into the numerous cases in which this Court has recognized the precise legal rule relied upon here.

At bottom, this is a quintessential case of malicious prosecution. An

officer falsified a search warrant seeking evidence of criminal activity and then propagated his material falsehoods at the arrest and detention stages. The district court properly assessed the matter; the Court should affirm.

## JURISDICTION

Ellis asserted claims under 42 U.S.C. § 1983 and Ohio tort law against Yasenchack. Complaint, RE1, PageID#1-10. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Yasenchack moved for summary judgment. MSJ, RE25, PageID#380-409. The district court denied summary judgment as to Ellis's malicious-prosecution claim, holding that Yasenchack was not entitled to qualified immunity or state statutory immunity. Opinion, RE37, PageID#632.

This Court has jurisdiction to review "a district court's denial of a claim of qualified immunity" at summary judgment solely "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In these collateral appeals, there is no jurisdiction to review the "district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-320 (1995)).

Unlike qualified immunity, Ohio's statutory immunity "provides immunity only from liability, not from suit." *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 605 (6th Cir. 2005). The Court thus has "no jurisdiction over the district court's denial of immunity under chapter 2744." *Id.*

## ISSUE STATEMENT

1.     Whether this Court lacks jurisdiction over Yasenchack's appellate arguments because they necessarily disagree with the district court's conclusion that genuinely disputed material facts exist on the lack-of-probable cause and participation elements of a malicious-prosecution claim.

2.     In the alternative, whether the district court properly concluded that whether Yasenchack is liable for malicious prosecution turns on disputed questions of fact yet to be resolved.

3.     Whether the right to be free from malicious prosecution, which this Court has recognized for decades, was clearly established in 2020.

## STATEMENT OF THE CASE

### A.     Factual background

Defendant Jeffey Yasenchack is a former detective for the Cleveland Police Department. Opinion, RE37, PageID#612. Yasenchack resigned following a recommendation of disciplinary action by the City of Cleveland's Citizen Review Board arising from the conduct at issue in this case. John H. Tucker, *Cleveland Police Detective Resigns, Avoids Discipline in Retaliation Case*, Cleveland.com (May 11, 2023), perma.cc/UJ4J-KFY6.

**1.** Detective Yasenchack and Mr. Ellis have a long history. In 2019, Yasenchack detained Ellis in a traffic stop and subsequently searched his underwear on a public street. *United States v. Ellis*, 2021 WL 3168271 at *4 (N.D. Ohio 2021). During the search, Yasenchack used significant force against Ellis. *Id.* Yasenchack testified in the resulting state-court case. *See State v. Ellis*, No. CR-19-637876-A (Cuyahoga Cnty. Common Pleas Mar. 13, 2019). In considering Ellis's motion to suppress, the state court found Yasenchack "not credible" with respect to Ellis's noncompliance and the source of his injuries because Yasenchack's account was "in direct contradiction to what was presented via the body cameras." *Id.*; *accord id.* (finding "that the credibility of the officer was severely diminished and not credible").

**2.** That previous matter lays the groundwork for Ellis's next encounter with Yasenchack. In April 2020, Yasenchack stopped a motorist near Ellis's residence. Opinion, RE37, PageID#613. He offered the motorist a deal: if the driver would supply Yasenchack with information about drug activity in the neighborhood, then Yasenchack would forgo writing the motorist a traffic ticket. *Id.*; *accord* Yasenchack Dep. 35:22-36:16, RE24-1, PageID#294-295. The driver allegedly pointed to Ellis's home. Opinion, RE37, PageID#613. Detective Yasenchack spent the next few weeks inves-

tigating the supposed tip the motorist had provided in exchange for leniency. He claimed during that time to have observed conduct he believed consistent with drug activity. *Id.*

Yasenchack then drafted and submitted an affidavit in support of a search warrant for Ellis's residence. Opinion, RE37, PageID#613. But the affidavit contained several material false statements—at least four—as a district court identified. *Ellis*, 2021 WL 3168271.

**The "concerned citizen":** Yasenchack's affidavit stated that he had received his initial tip from a "concerned citizen," when in fact he had been pointed toward Ellis's house by a driver whom he had "pressured and threatened," and with his body camera turned off for the motorist's response. *Id.* at 4. Because the information was given under duress, the district court concluded that a jury could find that this statement "was false"— a jury could conclude that, "[a]t best, the citizen was concerned about himself, not any ongoing vice investigation." *Id.* at *4 & n.7.[1]

**The "confidential informants":** Yasenchack claimed to have stopped a vehicle leaving Ellis's home whose occupants identified Ellis as their dealer. Opinion, RE37, PageID#613. But one of those individuals "told

---

[1] Another individual described in the affidavit as a "confidential informant" also provided information to Yasenchack to avoid a citation after a traffic stop. Yasenchack Dep. 39:11-20, RE24-1, PageID#298. He did not include any information about this "informant" is the case file. *Id.* 38:24-39:10.

a defense investigator that he did not buy drugs from [Ellis] and has never seen Ellis sell drugs to anyone." *Ellis*, 2021 WL 3168271, at \*3. Both individuals testified at a suppression hearing that they had never told Yasenchack that Ellis sold drugs to them or anyone else. *Id.* After that hearing, the court determined that "the[se] allegations … were false." *Id*.

**The glaring omission:** Yasenchack omitted from the affidavit any mention of his prior testimony against Ellis in the state-court proceeding, despite that he "knew that the state court had found him not credible." *Ellis*, 2021 WL 3168271, at \*4. He "cho[se] instead to leave the false impression about his credibility and that there was nothing about Ellis's state court case that was unusual or that bore on the probable cause determination for the search warrant" at issue. *Id.*

**The "open" criminal charges**: Yasenchack represented in the affidavit that a drug case against Ellis was "open and currently in appeals court," referring to the earlier state-court prosecution. *Ellis*, 2021 WL 3168271, at \*4. But the state court of appeals dismissed the State's appeal for lack of jurisdiction three weeks before Yasenchack swore his affidavit. *Id.* (citing *State v. Ellis*, No. CA-19-108970 (Ohio App. 8th Dist. filed Sept. 6, 2019)). Back in the state trial court, the prosecution moved to dismiss the criminal case against Ellis (*id.*), and the motion was granted by 10:00 a.m.

the next day—the day Yasenchack submitted the affidavit seeking a search warrant against Ellis. *Id.*

Given that Yasenchack knew the Court of Common Pleas had granted Ellis's motion to suppress (Yasenchack Dep 14:9-1, RE24-1, PageID#273), he knew that the prosecutor's office had attempted to appeal the decision (*id.*), and he admitted that he was in the habit of reviewing the court dockets of criminal matters in which he was involved (*id.* at 15:3-13, PageID#274), a federal court found Yasenchack's representations in the affidavit false to the degree that Yasenchack had engaged in a "deliberate falsehood" or "reckless disregard for the truth." *Ellis*, 2021 WL 3168271, at *4 (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)).

**3.** Relying on Yasenchack's affidavit and unaware of its falsity, a judge on the Cuyahoga County Court of Common Pleas found that probable cause existed and issued a search warrant for Ellis's home. Opinion, RE37, PageID#613. In the home, officers found materials that led to the filing of a federal criminal complaint against Ellis. *Id.*; *see United States v. Ellis*, No. 20-cr-302 (N.D. Ohio Feb. 11, 2020), ECF No. 1.

After a preliminary hearing, a magistrate judge found sufficient evidence to establish probable cause for the criminal charges against Ellis (*Ellis*, No. 20-cr-302 (N.D. Ohio May 28, 2020), ECF No. 11), and Ellis was

subsequently indicted by a grand jury (*see Ellis*, No. 20-cv-302 (N.D. Ohio June 11, 2020), ECF No. 14).

The district court ultimately granted Ellis's motion to suppress the evidence obtained in the home search. *Ellis*, 2021 WL 3168271, at \*1. The court recognized that "Det. Yasenchack made misleading and false statements" to procure a search warrant for Ellis's residence and that, because of Yasenchack's falsehoods and misleading omissions, "the search warrant affidavit lack[ed] probable cause." *Id.* at \*5.

The government attempted to avoid suppression on the basis of good faith. *Ellis*, 2021 WL 3168271, at \*5. But the district court rejected that defense because "the warrant was issued in reliance on information that Det. Yasenchack knew was false or would have known was false except for his reckless disregard of the truth." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 906-907 (1984)). It therefore "ha[d] no difficulty seeing the deterrence value of suppression." *Id.* at \*6. "Det. Yasenchack was dishonest or reckless in the execution of his duties as a law enforc[e]ment officer, *again*." *Id.* (emphasis added). The court thus ordered all evidence found during the search of Ellis's residence, and the fruits of that search, suppressed. In light of the suppression ruling, the government moved to dismiss the charges against Ellis, and the court granted the motion. *Ellis*, No. 20-cr-302 (N.D. Ohio Aug. 27, 2021), ECF Nos. 67-68.

Ellis remained in custody for the 15-month duration of these federal criminal proceedings. *See Ellis*, No. 20-cv-302 (N.D. Ohio May 20, 2020) (remanding Ellis to custody); Opinion, RE37, PageID#614 (noting "release[] from custody on August 27, 2021").

### B. Procedural background

Ellis sued Yasenchack following the dismissal of the federal criminal charges against him. Complaint, RE1, PageID#1. The complaint asserted claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution, a state-law malicious-prosecution claim against Yasenchack, and claims against the City of Cleveland stemming from Yasenchack's conduct. *Id.* at 6-9, PageID#6-9.

Both Yasenchack and the City of Cleveland moved for summary judgment. Opinion, RE37, PageID#614. Ellis voluntarily dismissed his claims against the City (RE33, PageID#384-385) but opposed Yasenchack's motion. The district court granted Yasenchack's motion in part and denied it in part and granted Ellis's motion to strike certain inadmissible hearsay in an affidavit that Yasenchack submitted. Opinion, RE37, PageID#632.[2]

---

[2] The district court granted summary judgment on Ellis's false-arrest claims in light of Ellis's non-opposition. Opinion, RE37, PageID#619-620. It denied summary judgment on Ohio state immunity (*id.*, PageID#631-632), an issue over which this Court lacks jurisdiction on interlocutory appeal (*Estate of Owensby*, 414 F.3d at 605), and which Yasenchack thus does not contest here.

On the merits, the district court rejected Yasenchack's assertion of qualified immunity on Ellis's malicious-prosecution claim. Opinion, RE37, PageID#620-630. The court acknowledged this Court's well-settled precedent holding that "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *Id.*, PageID#620 (quoting *King v. Harwood*, 852 F.3d 568, 582-583 (6th Cir. 2017)). And, to prove such a claim, the court acknowledged that a plaintiff must have evidence to show that (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute the plaintiff"; (2) "there was a lack of probable cause for the criminal prosecution"; (3) "the plaintiff suffered a deprivation of liberty" "apart from the initial seizure"; and (4) "the criminal proceeding [was] resolved in the plaintiff's favor." *Id.*, PageID#621 (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010)).

Yasenchack did not contest the fourth element—favorable resolution for Ellis. Opinion, RE37, PageID#621. As to the remaining three elements, the district court found genuine disputes of material fact that precluded summary judgment of qualified immunity. *See id.* at PageID#622-630.

On the *first* element—influencing initiation of a criminal proceeding—the district court found "genuine disputes of material fact as to whether Defendant Yasenchack made, influenced, or participated in the decision to prosecute" Ellis. Opinion, RE37, PageID#623-624. It pointed to Yasenchack having admitted during his deposition that he expected that executing the search warrant would lead to evidence of criminal activity and the filing of criminal charges. *Id.* The degree of Yasenchack's participation in the decision to prosecute and the foreseeability of that prosecution at the time of his misstatements in his search warrant affidavit thus both created factual disputes that could not be resolved at summary judgment. *Id.*

On the *second* element—lack of probable cause to prosecute—the district court similarly held that Ellis raised "genuine disputes of material fact sufficient to overcome … the presumption of probable cause arising from his criminal indictment" and thus to "establish genuine issues of material fact … as to whether his criminal prosecution lacked probable cause." Opinion, RE37, PageID#18. In so doing, the court recognized that, even where a defendant is ultimately indicted by a grand jury, earlier actions can be relevant to the existence of probable cause in malicious-prosecution claims. *Id.*, PageID#626-627. And applying this Court's precedent in such a circumstance, the court concluded that, because Yasenchack had deliberately or

recklessly made false statements in procuring affidavits integral to Yasenchack's prosecution, and those statements were material and independent of the grand jury, Ellis had "raised genuine disputes of material fact sufficient to overcome, at least at summary judgment, the presumption of probable cause arising from his criminal indictment." *Id.*, PageID#629. "And because [Ellis] can overcome this presumption, he also establishes that genuine issues of material fact exist as to whether his criminal prosecution lacked probable cause." *Id.*

On the *third* element—deprivation of liberty—the district court concluded that Ellis suffered a deprivation of liberty by being "detained for 15 months" as a result of Yasenchack's actions. Opinion, RE37, PageID#629-630.

Having identified numerous genuine, material factual disputes as to each of the contested elements of Ellis's claims, the district court concluded that "the facts taken in the light most favorable to [Ellis], would allow a reasonable juror to find that Yasenchack violated Ellis's clearly established Fourth Amendment right to be free from malicious prosecution." Opinion, RE37, PageID#630. This qualified-immunity appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly rejected Yasenchack's qualified-immunity defense at summary judgment.

**A.** The district court identified numerous disputed factual issues and correctly found that these disputed, material facts precluded summary judgment as to whether Yasenchack engaged in malicious prosecution.

Yasenchack only disputes two of the elements on appeal—he argues that a reasonable jury could not find a lack of probable cause for the prosecution and could not find that Yasenchack influenced the prosecution. But the disputed facts the district court identified put these issues squarely before the jury.

**1.** Settled circuit law confirms that a malicious prosecution plaintiff can overcome a presumption of probable cause where an officer lied in an affidavit and that affidavit affected the decision to prosecute. Construing the facts in Ellis's favor, the district court concluded that Ellis presented sufficient evidence to put this dispute before a jury. Yasenchack disagrees with the district court's assessment of the record evidence, but such fact-specific issues are outside the jurisdictional scope of this interlocutory appeal.

Nor can Yasenchack recast the district court's opinion into an application of the fruit of the poisonous tree doctrine. The district court did not exclude or refuse to consider illegally seized evidence. Instead, it held only that the illegal character of that evidence was *part* of the probable cause

calculus. It is Yasenchack who advocates for a novel rule that would insulate officers who institute prosecutions knowing that have no hope of succeeding because the only evidence of guilt will be suppressed. That proposition is inconsistent with the Fourth Amendment, Supreme Court precedent, and numerous cases from this Court and sister circuits.

**2.** Yasenchack is also jurisdictionally barred from contesting the district court's determination that there is sufficient record evidence by which a jury could conclude he influenced the decision to prosecute Ellis. Regardless, the district court's holding is well supported by the record—all of Yasenchack's misstatements were included in the "probable cause" section of the affidavit attached to the criminal complaint against Ellis. Yasenchack cannot portray himself as merely a passive participant when his lies precipitated and formed the basis for Ellis's prosecution, as was his stated intent.

**B.** The right to be free from malicious prosecution has been established in this Court for decades. Yasenchack makes no real attempt to distinguish any of the numerous legally and factually similar cases. Instead, he again raises the fruit of the poisonous tree doctrine. But that doctrine is irrelevant to this case and irrelevant to the qualified immunity analysis because it would not affect an officer's knowledge that his *conduct* was unlawful. Yasenchack's clearly was.

**STANDARD OF REVIEW**

"On appeal of a district court's order denying summary judgment on qualified immunity grounds, [this Court] consider[s] all the relevant facts in the light most favorable to the plaintiffs and review[s] *de novo* the district court's determination on the legal question of the availability of qualified immunity." *Brannum v. Overton Cnty. School Bd.*, 516 F.3d 489, 494 (6th Cir. 2008). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[I]n most appeals of denials of qualified immunity," the Court "must defer to the district court's determinations of fact," including "'the inferences that the district court draws from those facts.'" *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018) (quoting *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015)). The Court is "bound by the district court's determinations about genuine disputes of fact, even if the panel would reach a different conclusion reviewing the facts de novo." *Meadows v. City of Walker*, 46 F.4th 416, 421 (6th Cir. 2022). In most cases, the court "need look no further than the district court's opinion," and "often may be able merely to adopt the district court's recitation of facts and inferences." *DiLuzio*, 796 F.3d at 611.

**ARGUMENT**

**THE DISTRICT COURT CORRECTLY REJECTED
YASENCHACK'S QUALIFIED-IMMUNITY DEFENSE AT THE
SUMMARY JUDGMENT STAGE**

The district court properly construed facts and inferences in Ellis's favor and determined that Yasenchack was not entitled to qualified immunity on Ellis's malicious-prosecution claim. The district court's understanding of those facts—which this Court may not disturb on interlocutory review—paint a clear picture: Yasenchack at least twice submitted false affidavits to search, arrest, and prosecute Ellis. Both state and federal courts found Yasenchack uncredible and tossed out criminal prosecutions that his lies initiated. In light of these exceptional facts, the court was right to conclude that a reasonable jury could hold Yasenchack liable for violating Ellis's clearly established right to be free from malicious prosecution.[3]

> **A.** **The district court identified material disputed facts as to whether Yasenchack violated Ellis's right to be free from malicious prosecution.**

The district court rejected Yasenchack's qualified-immunity defense at summary judgment because of genuinely disputed facts under this

---

[3]   Ellis acknowledges that this Court is bound by Supreme Court and Sixth Circuit precedent holding that officers possess a defense of qualified immunity against Section 1983 claims. *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). Nonetheless, Ellis preserves for later review the argument that the Court should overrule or recalibrate the doctrine of qualified immunity.

Court's applicable legal framework. This Court "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment" that "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-716 (6th Cir. 2006). A malicious-prosecution claim exists where "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *King*, 852 F.3d at 580 (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)) (alteration in original); *see Sykes*, 625 F.3d at 309-310. Based on the evidence presented, the district court identified genuinely disputed materials facts and inferences that, drawn in the light most favorable to Ellis, could support a reasonable jury finding that Yasenchack violated the Constitution by engaging in malicious prosecution.

Yasenchack did not contest the fourth element—a favorable termination—before the district court and does not do so on appeal. Opinion, RE37, PageID#621. Nor could he; the Supreme Court has recently clarified that a plaintiff alleging malicious prosecution "need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36,

49 (2022). That basic requirement is unquestionably satisfied here, as the government dismissed all charges against Ellis after a district court suppressed nearly all the evidence against him as a result of Yasenchack's misconduct. *Ellis*, No. 20-cr-302 (N.D. Ohio Aug. 27, 2021), ECF Nos. 67-68.

Yasenchack also does not challenge on appeal the district court's conclusion on the third element—that Ellis suffered a deprivation of liberty because of the criminal proceedings against him. Opinion, RE37, PageID#629-630. Again, that element is plainly satisfied here. A plaintiff must show only that he suffered a deprivation "apart from the initial seizure" at his search or arrest to maintain a claim for malicious prosecution. *Sykes*, 625 F.3d at 308-309. Ellis was detained for 15 months during his prosecution, and the detention was both unlawful and a direct result of Yasenchack's actions.

That leaves two elements: Yasenchack's involvement in the decision to initiate criminal proceedings against Ellis and the lack of probable cause to do so. Yasenchack's arguments on both fronts quarrel with the district court's conclusion that there were genuine issues of fact on these elements, arguments exceeding the boundaries of this Court's jurisdiction. And even where he attempts to posit a legal question that might be the proper subject of an interlocutory appeal, Yasenchack's arguments are mistaken. The district court correctly recognized that this is a paradigmatic case of malicious prosecution and applied this Court's settled framework to find genuinely

disputed facts from which a jury could reasonably conclude that Ellis was wrongfully detained due to Yasenchack's unconstitutional actions.

### 1. The Court lacks jurisdiction to resolve Yasenchack's disagreement with whether genuine fact disputes exist on probable cause.

The district court found that a reasonable jury could find there was a lack of probable cause for the criminal prosecution. Yasenchack contends (at 18-28) that Ellis cannot establish a lack of probable cause as required to proceed on a theory of malicious prosecution. But whether or not there was probable cause is, in a civil action, a question of fact appropriately resolved by the jury. The district court thus determined, under this Court's settled precedent for malicious-prosecution claims predicated on officers' false affidavits, issues of fact exist that preclude summary judgment. The Court cannot disturb that fact-based conclusion in this interlocutory posture.

Yasenchack attempts (at 18-24) to avoid this clear jurisdictional bar by recasting the district court's decision as applying the "fruit of the poisonous tree" doctrine in a civil case. But the district court expressly disavowed doing so and instead relied on settled law to find genuine issues of fact. Opinion, RE37, PageID#624 & n.2. Even were the court to consider this question, the district court's opinion is fully aligned with decisions rejecting application of the fruit of the poisonous tree doctrine in Section 1983 cases. Ellis does not seek to dispositively exclude evidence that was suppressed in

20

criminal proceedings—instead, he contends only that an officer's knowledge that evidence was obtained unlawfully *bears on* the probable cause analysis in a malicious-prosecution claim. That is consistent with this Court's precedents, faithful to Supreme Court precedent, and the only sensible rule to apply to fact patterns within the heartland of malicious prosecution.

### a. The district court found probable cause genuinely disputed in light of Yasenchack's false statements that spurred a prosecution.

The district court held that a reasonable jury could find a lack of probable cause to prosecute—a fact-bound inquiry—based on the record evidence. Yasenchack cannot here challenge the facts and inferences that the district court concluded a reasonable jury could draw in Ellis's favor to sufficiently negate probable cause. This Court lacks jurisdiction to disturb that conclusion.

In general, appellate courts have jurisdiction "to hear appeals only from 'final decisions' of district courts." *Johnson*, 515 U.S. at 309 (quoting 28 U.S.C. § 1291). Interlocutory appeals like Yasenchack's "are the exception, not the rule." *Id.* The Supreme Court has held that certain appeals from denials of qualified immunity are appealable as "collateral orders" where the issue concerned "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." *Id.* at 311 (quoting *Mitchell*, 472 U.S. at 528).

A district court's "determination that the summary judgment record … raised a genuine issue of fact" is "not a 'final decision' within the meaning of the relevant statute," and so cannot form the basis for an interlocutory appeal. *Johnson*, 515 U.S. at 313. In such a case, the appellant's challenge raises factual issues that are not "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Id.* at 314. And the existence or nonexistence of a triable issue of fact is within the core competence of trial, not appellate judges. *Id.* at 316. Thus, the Supreme Court has foreclosed interlocutory challenges to those types of determinations—regardless of whether the appellant tacks on a properly appealable argument, like whether the alleged violation was clearly established. *Id.* at 318; *accord, e.g.*, *DiLuzio*, 796 F.3d at 609-611.

Yasenchack's principal argument is that the district court erred in concluding that a genuine dispute of material fact exists as to probable cause. Yasenchack Br. 23-24, 27-28. But such arguments are outside this Court's power to entertain at this interlocutory stage. After all, "the existence of probable cause is a question of fact." *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006); *Webb v. United States*, 789 F.3d 647, 665 (6th Cir. 2015) (quoting *Painter v. Robertson*, 185 F.3d 557, 570 (6th Cir. 1999)) ("In section 1983 cases, the existence of probable cause usually poses a jury question.")). The district court's conclusion that the record evidence

put this fact into genuine dispute pushes Yasenchack's arguments outside the Court's jurisdiction.

As this Court has explained, it lacks jurisdiction where an officer "does not dispute the legal theory of Plaintiff's claim—that without probable cause, the arrest would have violated Plaintiff's clearly established constitutional rights." *Gregory*, 444 F.3d at 743. Instead, where the officer's "argument goes to 'whether or not the pretrial record sets forth a "genuine" issue of fact for trial' this Court lacks jurisdiction to entertain [the officer]'s appeal of the district court's denial of qualified immunity." *Id.* (quoting *Johnson*, 515 U.S. at 313).

Below, the district court evaluated "the existence of probable cause"— "a question of fact" (*Gregory*, 444 F.3d at 743)—and it found that material factual disputes precluded summary judgment on that question. In so doing, the district court adhered precisely to settled law in ascertaining which fact disputes were material. It began its analysis with the observation that, typically, an indictment by a grand jury creates a strong presumption of probable cause, which will ordinarily defeat a malicious-prosecution claim. Opinion, RE37, PageID#626 (citing *Sykes*, 635 F.3d at 311). As this Court has long held, "[a]s a general rule, 'the finding of an indictment, fair upon its

face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Webb*, 789 F.3d at 660 (quoting *Barnes*, 449 F.3d at 716).

But "[t]he existence of an indictment is … not a talisman that *always* wards off a malicious-prosecution claim." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (emphasis added). As relevant here, a plaintiff can rebut any presumption of probable cause arising from a grand jury indictment where:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*King*, 852 F.3d 587-588.

The district court held that genuine issues of fact exist such that a reasonable jury could find that Ellis's case fits within the *King* framework. Opinion, RE37, PageID#16-18. On the first inquiry, the court noted the numerous false statements and misleading omissions that Yasenchack made in securing a search warrant for Ellis's residence. *Id.* Although Yasenchack claimed that witnesses told him that they had purchased drugs from Ellis,

a prior district court held that those allegations in the search warrant affidavit "were false." *Ellis*, 2021 WL 3168271, at \*3. Yasenchack described one witness, who allegedly identified Ellis's residence as a location of interest for drug activity, as a concerned citizen—but in reality he had pressured that witness to give him information and turned his body camera off so that the response was not recorded. *Id.* at \*4. The same court held that it was "false to characterize that person as a 'concerned citizen'" because "[a]t best, the citizen was concerned about himself, not any ongoing vice investigation." *Id.* at \*4 & n.7. And Yasenchack averred that Ellis had an open criminal case, despite that the case was dismissed before Yasenchack's affidavit was filed. While Yasenchack claimed not to have been aware that the case was dismissed, Ellis provided evidence that Yasenchack was in the habit of reviewing the dockets of criminal matters in which he was involved, and that he was aware that the state court had granted Ellis's motion to suppress and the state had appealed. Opinion, RE37, PageID#628.

These false statements were each repeated *in their entirety* in the "probable cause" section of the affidavit submitted in support of Ellis's federal indictment. *See* Affidavit ¶¶ 10-15, *Ellis*, No. 20-cv-302 (May 18, 2020), ECF No. 1-1 (Complaint Affidavit). The affiant stated that "in mid-April 2020 Cleveland Police Vice Detective Jeffrey Yasenchack received infor-

mation from a *concerned citizen* about a black male residing at [Ellis's address] selling drugs out of his house." *Id.* ¶ 10 (emphasis added). The affidavit continued that the later-discredited "confidential informant" identified Ellis as "Lays," a local drug dealer. *Id.* ¶ 11. It claimed that Yasenchack had "arrested Ellis in 2019" and that the "case [was] open and currently in appeals court," despite that the charges were dismissed four days earlier. *Id.* ¶ 12. And it repeated the false claim that Yasenchack had received tips from two additional confidential informants. *Id.* ¶ 14. Yasenchack's falsehoods thus spread even beyond the search affidavit and directly into justifying the criminal prosecution.

Resolving disputes and making inferences in Ellis's favor, the district court determined that there were "several disputes of material fact as to whether [Yasenchack], in setting Ellis's prosecution in motion, knowingly or recklessly supplied false statements in his search warrant affidavit." Opinion, RE37, PageID#629. That was the same conclusion this Court reached on similar facts in *King*. There, the detective obtained a search warrant for the defendant's home based on an affidavit omitting critical details tending to undermine probable cause. *King*, 852 F.3d at 574. He later prepared a false investigative report and provided false grand jury testimony based on the same errors infecting his search affidavit. *Id.* at 574-575. Based on the evidence of disputes as to these statements, this Court held that the

defendant "raised genuine issues of material fact as to … whether [the detective] set [the] prosecution in motion *by applying for search warrants* despite the lack of probable cause to search," by "seeking King's indictment despite the lack of probable cause," "*or* by making knowing or reckless false statements in [his] investigative report." *Id.* at 591 (emphasis added). Ellis's similar allegations (and evidence) that Yasenchack did the same leads to the same result.

On the second *King* factor, the district court concluded that a reasonable jury could find that the numerous falsehoods discussed above were material to Ellis's prosecution. There is nothing in the record that suggests that Yasenchack could have obtained a search warrant absent his lies and omissions, and nothing to suggest that the government would have had any incriminating evidence without the warrant. Opinion, RE37, PageID#629. And once again, Yasenchack's statements were not isolated to the search warrant affidavit—they were fully reproduced in the affidavit supporting the federal criminal complaint. Complaint Affidavit ¶¶ 10-15. In fact, the background and justification for Yasenchack's search warrant comprised *more than half* of the "probable cause" section of the affidavit. Given these circumstances, there is at least an inference that the false statements played a role in the determination that probable cause existed for Ellis's arrest and prosecution.

Finally, on the third *King* factor, the district court found that Yasenchack's statements were "independent of the grand jury" because they "were made in Yasenchack's search warrant affidavit, not the later grand jury proceeding." Opinion, RE37, PageID#629. That conclusion is plainly correct (and Yasenchack does not challenge it on appeal)—by his own account, Yasenchack did not participate in the grand jury proceedings. Yasenchack Dep. 71:14-18, RE24-1, PageID#330.

Based on the factual disputes as to all of these factors, the district court correctly held that "Ellis has raised genuine disputes of material fact sufficient to overcome, at least at summary judgment, the presumption of probable cause arising from his criminal indictment." Opinion, RE37, PageID#629. That is the precise result this Court reached on similar facts in *King*. 852 F.3d at 591. And, by presenting evidence sufficient to overcome the presumption, a genuine issue of material fact as to whether the prosecution lacked probable cause follows. *Id.* ("King has raised genuine issues of material fact unrelated to his grand-jury testimony that are sufficient to overcome a motion for summary judgment based on … qualified immunity.").

Yasenchack cannot challenge on appeal the district court's conclusion that genuine fact disputes pervade the probable-cause analysis, itself a fact

question. Indeed, this Court's precedent squarely places the arguments Yasenchack attempts to raise outside the Court's jurisdiction. In *Gregory*, the district court had recognized "several reasons" that a jury might find that the officer "lacked probable cause." 444 F.3d at 743. Many of the contested facts matched those at issue below—the officer's awareness of certain facts and the materiality of various errors and omissions to the ultimate probable cause determinations. *Id.* at 743-744. But probable cause, materiality, and the officer's awareness are all issues of fact (or mixed questions of law and fact) "for the jury," with the result that "this Court lacks jurisdiction to entertain [an interlocutory] appeal" challenging them. *Id.* Yasenchack's challenge—that, contrary to the district court's holding, "there are no genuine issues of material fact" concerning probable cause—is thus not cognizable on this interlocutory appeal.

To be sure, this Court has recently explained that "in a civil case when the historical facts are undisputed, the "ultimate question of probable cause" can be determined by the court and can be presented on appeal. *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020).[4] But this is plainly not such

---

[4]  *Gerics* cannot be read to allow district and appellate courts to resolve *all* disputes concerning probable cause at the summary judgment stage on the theory that resolving factual disputes in the nonmovant's favor yields a consistent set of facts to evaluate as a matter of law. That approach would be inconsistent with *Johnson* and numerous Sixth Circuit cases applying it in this context. *See, e.g.*, *Ramsey v. Rivard*, 110 F.4th 860, 867 (6th Cir. 2024) (finding a lack of jurisdiction over officer's claim that "probable cause was

a case. The district court did not "determine[] that the historical facts were undisputed." *Id.* at 805-806. Rather, it recognized numerous factual disputes precluding summary judgment and based its holding on those disputes, rather than ossifying the facts and then applying the law. And on appeal, Yasenchack is clearly not "willing to concede the most favorable view of the facts to the plaintiff." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998).

Instead, just as in *Gregory*, the parties here dispute the underlying historical facts, such as whether Yasenchack was aware that the charges against Ellis had been dismissed at the time he filed his affidavit. Yasenchack Br. 27. Yasenchack disputes whether his falsehoods were "material to the prosecution of Ellis." *Id.* And Yasenchack therefore disputes the ultimate question of whether there was probable cause to prosecute. But, as

established even without" the errors in the affidavit); *Anderson v. Holmes*, 2022 WL 577668, at *2 (6th Cir. 2022) (similar); *Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013) (explaining that such a restrictive reading of *Johnson* is impossible given that the court there took as given the facts the district court assumed and still found a lack of jurisdiction); *cf. Clark v. Louisville-Jefferson Cnty. Metro Gov't*, 130 F.4th 571, 580-581 (6th Cir. 2025) (per curiam) (holding that the materiality of alleged *Brady* evidence is a mixed question of law and fact such that challenges to materiality cannot be considered on appeal). *Gerics* merely codified this Court's well-accepted holding that if there are *no* facts in dispute, then an officer can appeal whether those *completely undisputed* facts establish probable cause as a matter of law.

*Gregory* established, when the parties disagree as to what happened and whether it mattered, "the district court's determination that there exists a genuine issue of fact for trial" is beyond the Court's interlocutory jurisdiction. 444 F.3d at 744.

This Court therefore lacks jurisdiction to revisit the facts the district court considered or the inferences it drew from those facts—yet those are the very conclusions that Yasenchack must challenge for this Court to award him qualified immunity. Yasenchack's arguments must fail.

> **b.    Yasenchack's attempt to reframe a finding of genuinely disputed facts as a legal question about poisonous-fruit doctrine lacks merit.**

Beyond the fact that Yasenchack's "fact-based," "evidence sufficiency" arguments are jurisdictionally barred (*DiLuzio*, 796 F.3d at 609), they are also mistaken on the merits. Yasenchack criticizes the district court for using the fruit-of-the-poisonous tree doctrine, a reason that court never gave and, indeed, expressly disavowed. Opinion, RE37, PageID#624 & n.2. Yasenchack's arguments are thus entirely beside the point—Ellis does not rely on the poisonous-fruits doctrine that suppresses evidence in criminal cases, and the district court did not either. Instead, as already previewed (*supra* at 23-24), under settled precedent, the holistic lack-of-probable-cause inquiry for a malicious-prosecution claim *can* include an officer's knowledge that he fabricated evidence to support a search warrant. Yasenchack *admits*

the existence of this legal framework (Br. 24-25), confirming that Yasenchack's real disagreement with the decision below is with the district court identifying sufficient evidence for a reasonable jury to find in Ellis's favor, a question outside the Court's jurisdiction.

**i.** The district court's actual conclusion—that Yasenchack's knowledge that the search was unlawful is *relevant* to the probable cause analysis—is fully consistent with precedent from the Supreme Court, this Court, and sister circuits. An officer's knowledge that he fabricated evidence to obtain a warrant can of course factor into a jury's assessment of whether there was a lack of probable cause to prosecute. Yasenchack's contrary proposition— that the legality of the initial search *cannot* be relevant in examining probable cause—disregards basics of Fourth Amendment law.

The inquiry starts with the Fourth Amendment, which provides: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. That "bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164, (1978). As the Supreme Court has explained, "it is the magistrate who must determine independently whether there is probable cause." *Id.* at 165. It would therefore "be an unthinkable imposition upon his authority if a

warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Id.*

Where officers fabricate evidence in support of probable cause to obtain an arrest warrant, the Supreme Court has squarely held that damages claims can proceed based on a plaintiffs' pretrial seizure pursuant to that warrant. *See Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017) ("Whatever its precise form, if the proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights, for all the reasons we have stated."). There is no reason that the result should differ when an officer "trick[s] the magistrate judge into believing that the evidence of probable cause was constitutionally acquired when law enforcement knew it was not." *Pagán-González v. Moreno*, 919 F.3d 582, 611 (1st Cir. 2019) (Barron, J., concurring).

Rather, as Judge Barron cogently explained in considering this precise question, "where officers trick the magistrate judge about the unlawfully acquired nature of the evidence that they have put forward to establish probable cause, the resulting warrant is no less premised on a lie or reckless half-truth that materially taints the magistrate judge's capacity to perform the constitutionally prescribed gatekeeping role than when the deceit concerns the existence of the evidence." *Id.* This Court has consistently held

that a warrant may not be relied upon by officers if it is obtained through knowing or reckless misstatements. *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005) ("[T]he *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure."); *United States v. Tucker*, 742 F. App'x 994, 1003-1004 (6th Cir. 2018) ("[T]he problems with the Saxon Avenue search were so glaringly obvious that the *Leon* exception does not apply."); *King*, 852 F.3d at 583; *Webb*, 789 F.3d at 660, 665.

Those cases rest upon the "understanding that a fully informed magistrate judge might have exercised its discretion to decline to issue the warrant had it known that the evidence of probable cause had been secured only through law enforcement conduct that was not constitutional or that was not undertaken in good faith." *Pagán-González*, 919 F.3d at 612 (Barron, J.). And *Franks* itself is consistent with this understanding—there, the Court forbade officers from relying on a warrant that was secured through misrepresentations about the constitutionality of the underlying evidence (a statement that was obtained in violation of the defendant's *Miranda* rights). 438 U.S. at 156-157. The thread running through these cases is that,

> [w]hen law enforcement intentionally or recklessly makes false statements to a magistrate judge about the constitutional or good faith means by which law enforcement obtained the evidence that supplies the basis for finding the probable cause necessary to justify the warrant that would permit a pre-trial seizure of a criminal defendant, such lies—or reckless omissions—undermine the magistrate judge's ability to perform its constitutional role under the Warrant Clause.

*Pagán-González*, 919 F.3d at 613 (Barron, J.). In that case, the knowing or reckless mistruths operate much like a bribe, short-circuiting the magistrate's role in assessing probable cause regardless of the strength of the underlying evidence. *Id* at 614. "Such deceit—even if it inheres only in a reckless omission, rather than a deliberate untruth, and even if it concerns the means of acquisition rather than the evidence's actual existence—prevents the magistrate judge from performing its constitutionally contemplated role as a neutral adjudicator of whether detention is warranted." *Id.*

An officer's deception of a magistrate thus frustrates the magistrate's mandate and the protections of the Warrant Clause whether the deception concerns whether evidence exists or whether it was obtained lawfully and will lawfully support a prosecution and conviction. When an officer knowingly or recklessly misleads a magistrate as to the constitutionality of the conduct he used to obtain evidence that supplies the basis for a defendant's seizure, the officer "strip[s] the magistrate judge of the ability to perform its constitutionally prescribed gatekeeping role." *Id.* And if the knowledge of

the unconstitutional tactics used to obtain certain evidence forms an important aspect of a reasonable magistrate's consideration, it is plainly relevant to the probable cause determination. That is why the Supreme Court has stated that the Fourth Amendment's prohibition on "government officials … detaining a person in the absence of probable cause" can "also can occur when legal *process* itself goes wrong." *Manuel*, 580 U.S. at 367 (emphasis added).

Recognizing these principles, this Court has squarely held that the mere existence of evidence tending to support probable cause to prosecute does not, on its own, doom a malicious-prosecution claim. In *Webb*, the Court explained that "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect." 789 F.3d at 670. In that case, asserting both malicious prosecution and fabrication-of-evidence claims, the plaintiff alleged that officers had fabricated "numerous" aspects of a search-warrant affidavit. *Id.* This Court reversed the district court's finding that probable cause existed for the arrest and revived both categories of claim. And the Court has repeatedly reiterated this holding in denying officers qualified immunity based on probable cause in malicious-prosecution claims. *See, e.g.*, *Mills*, 869 F.3d at 480.

The principles discussed above formed the basis for this Court's decision in *King*. There, the Court also noted that the falsification of evidence can create liability in a malicious-prosecution claim even where there is other evidence of probable cause. *King*, 852 F.3d 589 n.5. And the court confirmed that malicious prosecution liability can exist (at least at the summary judgment stage) where an officer "appl[ies] for search warrants despite the lack of probable cause to search" and then propagates that constitutional harm by using the illegally-obtained evidence to "seek[]" the defendant's indictment. *Id.* at 591. The Court certainly did not *forbid* courts from considering the earlier and repeated misstatements to courts in assessing probable cause—an inquiry aimed at determining how a reasonable officer or magistrate would assess a case's chance of success. The fact that evidence was knowingly obtained in derogation of constitutional protections is at least *relevant* to the ultimate probable cause inquiry—it is one factor a reasonable officer or magistrate would consider among the totality of the circumstances. *Sykes*, 625 F.3d at 306. That rule is all Ellis advanced below, and all he needs to prevail on appeal.[5]

---

[5]   To the extent the "district court's determinations are 'unclear'" on this point, the Court "review[s] the record to 'determine what facts the district court … likely assumed.'" *Ramsey*, 110 F.4th at 868 (quoting *Romo*, 723 F.3d at 675); *accord Johnson*, 515 U.S. at 319. And the Court can affirm a denial

**ii.** This conclusion—that an officer's knowledge that evidence was obtained through a fraudulent and unlawful search *can* undermine probable cause to prosecute—has nothing to do with the fruit of the poisonous tree doctrine, contrary to Yasenchack's assertions (at 18-24). Instead, it merely recognizes that probable cause is based on a "totality-of-the-circumstances approach" considering "the facts and circumstances that the officers were aware of at the time." *Caskey v. Fenton*, 2022 WL 16964963, at *5 (6th Cir. 2022) (citing *Sykes*, 625 F.3d at 306). Ellis does not seek to *exclude* illegally procured evidence from the probable cause analysis; he seeks only to *include* the fact that evidence was unlawfully obtained.

Yasenchack is thus plainly wrong to contend (at 18-24) that the district court erred in applying the "fruit of the poisonous tree" doctrine to exclude certain evidence—the scales, drugs, and firearm allegedly uncovered during the illegal search—from the probable cause analysis. That is expressly *not* what the district court did. Yasenchack made this same argument below. RE25, PageID#400-402. The district court acknowledged it and noted that "[t]he Sixth Circuit has not ruled on this issue." Opinion, RE37, PageID#624 n.2. While the court declined to adopt Yasenchack's bright-line

---

of qualified immunity on grounds different than those relied on by the district court. *Garza v. Lansing School District*, 972 F.3d 853, 871 (6th Cir. 2020).

repudiation of the exclusionary rule, it did not *apply* the rule either. *Id.* Instead, the court noted that the fruit of the poisonous tree doctrine was irrelevant because Ellis "claims that [Yasenchack] set his prosecution in motion by requesting a search warrant without probable cause, *not that the ultimate suppression of the evidence in Plaintiff's criminal case is why probable cause was lacking.*" *Id.* (emphasis added).

The district court did not apply the fruit of the poisonous tree doctrine and did not exclude any evidence at all (aside from the stricken affidavit containing hearsay, which is not at issue here). Instead, it unremarkably held that the fact that Yasenchack had fraudulently obtained a search warrant for Ellis's home is *relevant* to the existence of probable cause to initiate the prosecution against Ellis. And because Ellis provided enough evidence from which a reasonable jury could find the presumption of probable cause arising from the grand jury's indictment overcome, he raised material factual disputes about the degree to which Yasenchack's knowledge and concealment of the unlawful nature of the search undercut other evidence tending to establish probable cause to prosecute. That is why the district court stated that because Ellis "can overcome this presumption, he also establishes that genuine issues of material fact exist as to whether his criminal prosecution lacked probable cause." Opinion, RE37, PageID#629. The Court

should reject Yasenchack's attempt to upset the decision below by arguing about a doctrine that the district court did not even apply.

The Second Circuit's approach to this question (on which Yasenchack mistakenly relies) is instructive. In a case concerning the exclusionary rule in civil actions, that court squarely held that "[t]he fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to" the plaintiff's "conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions." *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999). There, the plaintiff sought to "elongate the chain of causation" to attribute damages for prolonged incarceration to an earlier unlawful search. *Id.* at 146. The court rejected that attempt, noting that the prophylactic goals of the exclusionary rule had already been served when it was applied in the underlying criminal case and that the damages sought did not fit the injury pleaded. *Id.* at 146-147.

But just a few years later, the Second Circuit explained that its holding in *Townes* should not be overread to make illegally-seized evidence *determinative* in every malicious prosecution case. Instead, the relevant inquiry is whether the officer had initiated a prosecution "without probable cause to believe that it could succeed." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). In *Boyd*, the court determined that a material question of fact existed as to whether an alleged statement was made before or after

a defendant's arrest: The Second Circuit held that if the evidence giving rise to the prosecution "would clearly not be admissible," then "there would be no probable cause to believe the prosecution could succeed." *Id.* at 77. The admissibility of the statement would "have to be resolved before the element of probable cause could be established." *Id.* That is, despite that the Second Circuit has declined to extend the fruit of the poisonous tree doctrine to a civil case, that same court recognizes that the fact that pertinent evidence was obtained unlawfully is a component of the probable cause inquiry that can generate material factual disputes precluding summary judgment.

Based on *Boyd* and follow-on cases, numerous courts within the Second Circuit have rejected arguments just like Yasenchack's. *See, e.g.*, *Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) ("Unlike the complaint in *Townes,* the Amended Complaint specifically asks for damages for Sarracino's malicious prosecution ... and alleges sufficient facts, including her search without warrant or consent and over Plaintiff's objections, the arrest and charges by Sarracino based on the weapons found as a result of that search, and the dismissal of the case following the decision on the suppression motion."); *Mazyck v. Johnson*, 2009 WL 2707360, at \*5 (E.D.N.Y. 2009) ("As the Second Circuit made clear in *Boyd*, the question is not whether there exists probable cause to prosecute, but rather whether there is probable cause to believe that a prosecution will succeed. In this

case, a reasonable jury could find that, because [the officers] knew that they lacked probable cause to arrest plaintiff, they had no probable cause to believe that the prosecution would succeed, given that the firearm would be suppressed."); *Murphy v. City of Elmira*, 2023 WL 593877, at *8 (W.D.N.Y. 2023) ("In cases where evidence from a search or arrest is later suppressed, courts have found that there is a reasonable dispute as to whether probable cause existed to believe a prosecution based on that evidence would be successful."); *Clynch v. Chapman*, 285 F. Supp. 2d 213, 228-229 (D. Conn. 2003) (similar).[6]

Just as Yasenchack cannot overread *Townes* in a manner the Second Circuit has foresworn, he cannot stretch the other circuit opinions declining to apply the fruit of the poisonous tree doctrine to Section 1983 claims to foreclose relief here. In *Martin v. Marinez*, for example, the Seventh Circuit distinguished the claims from a case alleging that officers "procured the fil-

---

[6]   It is no response to insist on a distinction between "formulations of the element of probable cause as sometimes 'probability of guilt' and as sometimes 'probability of success.'" *Boyd*, 336 F.3d at 76. Just as "New York cases involving malicious prosecution claims cite to the two formulations interchangeably," so too do Ohio cases. *Id.*; *see, e.g.*, *Clermont Envtl. Reclamation Co. v. Hancock*, 474 N.E.2d 357, 361 (Ohio Ct. App. 1984) ("Malicious prosecution will generally lie where a lawsuit is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure"); *Daly v. Certo*, --- N.E.3d ---, 2025-Ohio-293 ¶ 63 (Ohio Ct. App. 2025) (same).

ing of the criminal complaint by making misrepresentations to the prose-cuting attorney." 934 F.3d 594, 603 (7th Cir. 2019). But that is this case exactly—the falsehoods and omissions in Yasenchack's unlawful search affidavit were repeated nearly verbatim in the affidavit supporting the criminal complaint and unquestionably led directly to the illegal seizure of the only evidence Yasenchack identifies as potentially supporting probable cause. No attenuation of the causal chain is needed to link damages from the ensuing prosecution to Yasenchack's statements.

The Tenth Circuit's treatment of the doctrine is even less applicable—in *Estate of Taylor v. Salt Lake City*, that court held only that that the rule did not apply in the strictest evidentiary sense to exclude statements of officers because a seizure was unconstitutional. 16 F.4th 744, 753 (10th Cir. 2021); *see also Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016). The Ninth Circuit similarly expressed confusion about why it was being asked to consider the exclusionary rule: "we find no indication in the record that Lingo ever sought to exclude evidence in this case on the basis of such rule," and so "even if we were to conclude that the exclusionary rule does apply to this action, it is unclear whether there is any evidentiary ruling that would be affected by that conclusion." *Lingo v. City of Salem*, 832 F.3d 953, 957 n.3 (9th Cir. 2016). And in *Lingo*, the plaintiff did not dispute the conclusion

that "if the officers could smell marijuana" then "they had probable cause to arrest her," unlike Ellis here. *Id.* at 961.

*Hector v. Watt* from the Third Circuit is yet farther afield. *See* 235 F.3d 154 (3d Cir. 2000). That decision concerned only damages, and did not address liability. *Id.* at 157. And it is unclear what of *Hector* remains good law. The Third Circuit there held that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution. *Id.* at 156. But the Supreme Court has since rejected the notion that a malicious prosecution plaintiff must provide "some affirmative indication of innocence." *Thompson*, 596 U.S. at 49. And in any event, the Third Circuit expressly disclaimed an intent to "address the complexities of … malicious prosecution under § 1983" in its decision. *Hector*, 235 F.3d at 156.

The decisions of these other circuits are thus inapplicable to this case, in which Ellis does *not* seek to exclude evidence from his civil case. Nor does he seek to attenuate causation—he alleges that Yasenchack swore his unlawful affidavit and then directly used this constitutional violation to secure a criminal prosecution, propagating the unconstitutionality. Yasenchack's invocation of the fruit of the poisonous tree doctrine is entirely misplaced.

**iii.** Because affirming would not rely at all on the fruit of the poisonous tree doctrine, the various policy concerns articulated by other circuits and reiterated in Yasenchack's briefs have no purchase here.

First, it bears emphasis that the exception recognized in *King* is an exceedingly narrow one. Allowing claims like Ellis's "would not mean that constitutional tort suits could be used to attack arrests based on warrants as a general matter." *Pagán-González*, 919 F.3d at 614. It would only preserve a claim "when the officers' reliance on that warrant is in bad faith—such as when the officer who" precipitates "the seizure is also responsible for the reckless or deliberate misrepresentations that led to the [arrest] warrant's tainted issuance." *Id.* at 614-615. By requiring that showing of bad faith, this Court has already ensured that the exception only sweeps in truly "malicious" prosecutions.

And the rule Ellis advocates is fully consistent with basic principles of causation in the Section 1983 context. As this Court has held, holding an officer "liable for all reasonably foreseeable consequences of his initial misdeeds finds support in the Supreme Court's decision in *Malley v. Briggs*, 475 US. 335 (1986)." *Sykes*, 625 F.3d at 315 (parallel citations omitted). There, the Supreme Court held that if an "officer caused [a] plaintiff[] to be unconstitutionally arrested by presenting a judge with a complaint and a supporting affidavit [that] failed to establish probable cause," then the argument that "the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant

and the improvident arrest" would be *inconsistent* with Section 1983. *Malley*, 475 U.S. at 337 & 344 n.7.

It is Yasenchack's position that would provide officers with a windfall when their blatant constitutional violations have their *intended* results. As the district court explained in suppressing the evidence in Ellis's case, "Yasenchack's response to the ultimate dismissal of the indictment in the state court case, by his own account, was to investigate Ellis for other potential crimes, and to do so on his own." *Ellis*, 2021 WL 3168271, at *4. "He did not turn over information he allegedly learned to another police officer to investigate or have another officer accompany him so that officer could confirm [his] account of what he saw or what people told him." *Id.* And he "provided nothing to ensure that a court could confirm that he was telling the truth this time, after he had been found not telling the truth about Ellis in the state court case." *Id.* He was hellbent on rearresting Ellis, to the point where he knowingly falsified an affidavit to obtain a search warrant. His *goal* was to prosecute Ellis, though he knew that due to his actions that prosecution would (or at least *should*) not succeed. And he kept his falsifications from the federal officers who eventually filed a complaint and sought an indictment against Ellis, causing these false statements to reappear in the supporting affidavit. At every stage, had Yasenchack been truthful with the relevant decisionmakers—the state magistrate, the federal officers and

prosecutors, and the federal magistrate—each may have determined not to press forward with doomed charges.

But Yasenchack was not forthcoming, and as a *direct result*, decisionmakers proceeded. Yasenchack provides no compelling justification for the proposition that an officer should escape liability for participating in the seizure and detention of a suspect who the officer *knows* cannot be convicted because of that officer's earlier constitutional violations. That is the exact purpose of the malicious prosecution tort and Section 1983 more broadly— to deter and remedy constitutional violations that result in a loss of liberty, just like those Ellis experienced here.

### 2. *The Court lacks jurisdiction to resolve Yasenchack's disagreement with whether genuine fact disputes exist as to his role in the prosecution decision.*

The Court also lacks jurisdiction to consider Yasenchack's disagreement with the district court's finding genuinely disputed facts over his contribution to the prosecution decision. In a malicious-prosecution claim, a plaintiff must show that "a criminal prosecution was initiated against [him] and that the defendant made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308. The district court concluded that Ellis had raised genuine disputes of material fact about the degree of Yasenchack's participation in the decision to prosecute Ellis, and thus properly denied Yasenchack summary judgment. Opinion, RE37, PageID#622-623.

**a.** This Court once again lacks jurisdiction over Yasenchack's challenge. "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311 n.9. It is thus a "fact determination." *Id.* Yasenchack characterizes his involvement as "exceedingly minimal." Yasenchack Br. 29. He states—with little elaboration—that "[t]here is no evidence to suggest that the federal prosecutor's decision to prosecute of subsequent prosecution were founded on any alleged misleading information furnished by Yasenchack." *Id.* at 30. But these assertions directly contradict the facts and inferences on which the district court relied in recognizing the existence of a factual dispute concerning Yasenchack's involvement. He offers no *legal* argument whatsoever that the district court erred in its determination on this element. Because Yasenchack's brief merely disputes the district court's finding of disputed fact issues, the Court lacks jurisdiction to entertain the argument. *Gregory*, 444 F.3d at 743.

**b.** In any event, Yasenchack's claim (at 30) that there is "no evidence" that he influenced or participated in the decision to prosecute Ellis is simply wrong. He insists (at 29-30) that he did not *make* the decision to prosecute. But "[u]nder the first element, an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual deci-

48

sion to prosecute, so long as the plaintiff can show that the officer 'influenced or participated in the decision to prosecute." *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020) (quoting *Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017)). In Section 1983 cases, an officer "may be liable for consequences caused by reasonably foreseeable intervening forces," such as when future actors rely on and propagate his falsehoods. *Caskey*, 2022 WL 16964963, at *6. All that is required to meet this standard is "to present some evidence that the impact of [the officer']s misstatements and falsehoods … extended beyond [a plaintiff's] initial arrest and ultimately influenced the [plaintiff's] continued detention." *Sykes*, 625 F.3d at 316. That evidence "is not narrowly limited" to the direct presentation of evidence to a magistrate or grand jury; it can instead be based on the officer's "knowing misstatements … to the prosecutor" or his "pressure or influence" over someone who made the decision to prosecute or testified at a hearing. *Id.* (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)).

Ellis more than cleared this low hurdle. In *Sykes*, this Court held that the mere fact that an officer's "investigatory materials … were clearly in the prosecution's *possession*" suffices. 625 F.3d at 316 (emphasis added). That is even more true when "it is apparent from the record that the prosecution actually relied on many of [the officer's] falsehoods in proceeding against

49

the Plaintiff[] by reproducing many of the very same material representations of the evidence that [the officer] had made." *Id.* That is this case to a tee. Each and every one of the falsehoods contained in Yasenchack's search warrant affidavit is reproduced in the affidavit supporting the criminal complaint. "[A] reasonable jury" could therefore "have concluded from the striking similarities between" the complaint affidavit and the officer's "falsehoods that the prosecution relied on [the officer]'s misstatements in filing criminal charges." *Id.*

True enough, this Court has held that "[t]o be liable for participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Webb*, 789 F.3d at 660. Applying this principle, it has recognized that some officers' involvement in investigations was too attenuated to constitute the required "influence" or "participation." False statements resulting from "negligence or innocent mistake are insufficient," for example. *Johnson v. Mosely*, 790 F.3d 649, 655 (6th Cir. 2015) (quoting *Robertson v. Lucas*, 753 F.3d 606, 617 (6th Cir. 2014)); *see also Richards v. Cnty. of Washtenaw*, 818 F. App'x 487, 493 (6th Cir. 2020) ("[M]erely filing an allegedly misleading case report, without more active participation, qualifies only as 'passive or neutral' participation."). And "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere

fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314.

Try as he might, Yasenchack cannot shoehorn the facts of this case into the mold of passive participation. Ellis showed, and the district court below concluded that a jury could find, that Yasenchack made numerous knowing or reckless false statements in his search warrant affidavit. Opinion, RE37, PageID#623, 627-630. A prior district court had also found that these statements were deliberate or reckless. *Ellis*, 2021 WL 3168271, at *4. These falsehoods unquestionably led to Ellis's arrest and prosecution "broadly" in that they "started the chain of events that ultimately led to the prosecutor's decision to proceed with the criminal charges." *Sykes*, 625 F.3d at 314. And more narrowly, Yasenchack "could have foreseen that by providing false information to the prosecutor … his misconduct could result not only in [Ellis's] initial seizure but also [his] eventual incarceration." *Id.* at 314-315. Indeed, that is exactly what happened—Yasenchack's falsehoods were duplicated in the affidavit supporting the federal criminal complaint. Complaint Affidavit ¶¶ 10-15. Taken together, these facts provide ample basis for the district court's conclusion that material disputed facts exist.

"False or misleading statements have consequences, and the officers who make them must bear responsibility." *Caskey*, 2022 WL 16964963, at *7. "The chain of causation is not broken by 'a prosecutor's decision to

51

charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.'" *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)). Because Yasenchack cannot contest the district court's finding of genuinely disputed facts and because the district court plainly applied the proper legal standard in assessing Yasenchack's participation, Yasenchack's legal arguments on the second element fail as well.

**B.     The constitutional right was clearly established.**

Ellis had a clearly established right to be free from the type of malicious prosecution to which Yasenchack subjected him. "Law-enforcement officers enjoy qualified immunity from suit" only "when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *King*, 852 F.3d at 582 (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). Though there is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality,'" the district court here was not blazing a new trail. *Id.* Rather, this Court had consistently recognized a right to be free of malicious prosecution in cases factually and legally similar to this one, well before any of the conduct underlying Ellis's complaint took place. The clearly-established prong may be a close question in many cases. This is not one of them.

**1.** This Court has plainly stated that "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King*, 852 F.3d 582-583 (quoting *Webb*, 780 F.3d at 660, 665). In *Miller v. Maddox*, the Court explained that the plaintiff "had a clearly established Fourth Amendment right to be free from seizure and prosecution based on fabricated evidence, and that [the officer] violated these rights by using his false statements as a basis for establishing probable cause, resulting in the initiation of prosecution against her." 866 F.3d 386, 396 (6th Cir. 2017). And in *Spurlock v. Satterfield*, the Court denied qualified immunity where plaintiffs alleged that officers "wrongfully investigated, prosecuted, convicted and incarcerated them; that [the officers] fabricated evidence and manufactured probable cause; that they were held in custody, despite a lack of probable cause to do so; and that [the officers] conspired to maliciously prosecute and convict them." 167 F.3d 995, 1005 (6th Cir. 1999).

Beyond these statements of legal principle, the facts of *King* are quite close to those here. Following a different officer's unsuccessful attempt to secure sufficient evidence against King for a prosecution, another officer

53

(Harwood) swore an affidavit in support of a search warrant that included numerous falsehoods and material omissions. *King*, 852 F.3d at 574. Harwood executed the search warrant and then arrested King based on evidence uncovered during that search. *Id.* King's prosecution proceeded in large part on that same evidence, with Harwood's continued involvement. *Id.* In those circumstances, this Court held that Harwood violated King's clearly established right to be free of malicious prosecution. Just so here.

These cases make it blindingly obvious that an officer in 2020 could not reasonably believe it acceptable to swear a false affidavit in support of a search warrant and thereby (by providing false information or deliberately withholding information) influence the decision to prosecute without probable cause. That is what Yasenchack did. He makes no attempt on appeal to distinguish these cases, because he cannot.

**2.** Yasenchack's principal response to this unmistakably clear body of caselaw is to complain (at 32-33) that, at the very least, it was unclear that the fruit of the poisonous tree doctrine would apply in civil cases. But this contention misunderstands the fundamentals of qualified immunity law and cannot justify Yasenchack's misconduct.

First, as explained in great detail above (at 38-45), this case does not turn on the application of the fruit of the poisonous tree doctrine *at all*. The district court did not exclude any evidence, and it did not use the doctrine

to elongate proximate cause. Instead, its holding was simply that Ellis could overcome any presumption of probable cause and that, having established Yasenchack's deliberate falsehoods, could show that those falsehoods would impact the probable cause analysis such that factual questions precluded summary judgment. And by 2020, this Court had clearly established in the malicious prosecution context that "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect." *Mills*, 869 F.3d at 480 (quoting *Webb*, 789 F.3d at 670); *accord King*, 852 F.3d 589 n.5. That principle, which underlies *King*, *Sykes*, and numerous other cases, was more than enough to put Yasenchack on notice that his conduct was unconstitutional and could result in money damages.

But even if the district court had applied the fruit of the poisonous tree doctrine, that would still not save Yasenchack's argument. "The requirement that a violation be 'clearly established' exists to put government officials on notice of wrongful conduct and protect officers acting in discretionary roles." *Caskey*, 2022 WL 16964963, at *10 (quoting *District of Columbia v. Wesby*, 582 U.S. 48, 62-63 (2018)). When considering whether a right is clearly established, courts must therefore "ask whether the law was 'sufficiently clear that every reasonable official would understand what he

is *doing* is unlawful.'" *Id.* (quoting *Wesby*, 582 U.S. at 63). "The key inquiry is whether the defendants had 'fair warning' of the unconstitutionality of their *actions*." *Miller*, 866 F.3d at 395 (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (emphasis added)).

The clearly-established requirement thus focuses on an officer's conduct rather than complex legal theories. Yasenchack's "claim that the contours of [the Court's] jurisprudence concerning malicious prosecution are not entirely clear misses the point." *Miller*, 866 F.3d at 395. The question is whether the *conduct* at issue was clearly established as unconstitutional, not whether there exist any vagaries in the doctrine of malicious prosecution. A distinction that "involves no conduct or facet of conduct by officers because any actions have already occurred by the time" the legal doctrine comes into play thus has no bearing on qualified immunity. *Caskey*, 2022 WL 16964963, at *11.

The conduct at issue in a malicious-prosecution claim like this is swearing an affidavit and obtaining a search warrant "based on false pretenses and then seeking an arrest warrant" and initiating and continuing a prosecution "based on these false statements." *Miller*, 866 F.3d at 395. In the Fourth Amendment context, "an officer cannot rely on a judicial determination of probable cause" for a search warrant "if that officer knowingly makes false statements and omissions to the judge such that but for these

falsities the judge would not have issued the warrant." *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). As this Court has explained, in Fourth Amendment civil rights actions, including malicious-prosecution claims, "the primary issue to resolve is whether a reasonable jury could find that, when [the officer] applied for the search and arrest warrants, [he] intentionally or recklessly disregarded material facts negating probable cause." *Tlapanco*, 969 F.3d at 650.

Regardless of whether illegally seized evidence could be admitted in later criminal proceedings, Yasenchack was fully on notice at the time he swore his false affidavit that doing so was unconstitutional and could lead to liability. The law governing his conduct, which would have informed the decision-making of any rational officer, was well established long before 2020. Yasenchack cannot seriously suggest that he believed his conduct to be compliant with the Fourth Amendment.

Qualified immunity is not designed to protect "the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Yasenchack cannot seek refuge in the doctrine here.

## CONCLUSION

The Court should dismiss the jurisdictionally barred arguments and otherwise affirm the denial of Yasenchack's motion for summary judgment.

Dated: April 2, 2025

Respectfully submitted,

/s/ *Paul W. Hughes*

PAUL W. HUGHES
SARAH P. HOGARTH
CHARLES SEIDELL
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

JOSEPH F. SCOTT
  *Scott & Winters LLC*
  *11925 Pearl Road*
  *Suite 310*
  *Strongsville, OH 44136*
  *(216) 912-2221*

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

(i)     complies with the type-volume limitation of Rule 32(a)(7) because it contains 12,996 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in New Century Schoolbook LT Std font in a size equivalent to 14 points or larger.

Dated: April 2, 2025                    /s/ *Paul W. Hughes*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2025, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: April 2, 2025                    /s/ *Paul W. Hughes*

# ADDENDUM: RECORD DESIGNATIONS

Pursuant to Local Rule 30(g), Appellee hereby designates the following relevant district court documents, all of which are part of the district court's electronic record.

| **Record Entry** | **Document Description** | **PageID Range** |
| --- | --- | --- |
| RE1 | Complaint | 1-10 |
| RE6 | Yasenchack Answer | 28-34 |
| RE23-1 | Ellis Deposition | 106-256 |
| RE24-1 | Yasenchack Deposition | 259-379 |
| RE25 | Yasenchack Motion for Summary Judgment | 380-527 |
| RE31 | Ellis MSJ Opposition | 564-579 |
| RE32 | Ellis Motion to Strike | 580-583 |
| RE33 | Stipulated Dismissal of Claims against City of Cleveland | 584-585 |
| RE35 | Yasenchack Motion to Strike Opposition | 588-594 |
| RE36 | Yasenchack MSJ Reply | 595-611 |
| RE37 | Opinion and Order | 612-632 |
| RE38 | Notice of Appeal | 633-634 |